JOAQUIN CIRIA
E-89966 Facility 2-12-117
C.S.P. - Solano State Prison
Post Office Box 4000
Vacaville, California 95696-4000

Plaintiff **IN PRO SE**
**JOAQUIN CIRIA**




# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOAQUIN CIRIA,** | **Case No. C 07-4770 MJJ(PR)** |
| Plaintiff, | |
| vs. | PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| **NICHOLAS J. RUBINO et al.,** | |
| Defendants. | |

## I N T R O D U C T I O N

The above-named plaintiff, **JOAQUIN CIRIA** (hereinafter "Plaintiff"), is a California prisoner proceeding in the above-entitled matter in pro se. The Plaintiff filed the aforesaid 42 U.S.C. § 1983, alleging that the above-named defendants withheld exculpatory evidence during the course of his criminal proceedings, in violation of his constitutional rights. He seeks declaratory and injunctive relief.

The court granted Plaintiff's leave to proceed in forma pauperis. The Defendants filed a Notice of Motion and Motion to Dismiss Plaintiff's § 1983 complaint, contending that the

-1-

1    "claims are barred by the doctrine of Heck Humphrey, 512 U.S.
2    477, 486-87 (1994); and by the applicable statute of limitations."
3    The Defendants further add that: "The Complaint fails also to
4    state a claim under Brady v. Maryland, 373 U.S. 83 (1963) and
5    fails to allege facts that make out an official capacity suit
6    under section 1983." (See Defendants' Motion to Dismiss
7    [hereinafter "Motion to Dismiss"], p. 2.)

8        As the following discussion establishes, the Defendant's
9    motion is based on an unreasonable application of federal law
10   and should not be granted.

11

12       **I. THE DOCTRINE OF HECK v. HUMPHREY DOES NOT APPLY TO
         PLAINTIFF'S § 1983 COMPLAINT.**
13

14       In this case, the defendants allege that "[A] prisoner may
15   not seek relief under 42 U.S.C. § 1983 that would necessarily
16   imply the invalidity of his conviction unless the plaintiff can
17   demonstrate the conviction has already been set aside, for example
18   by the issuance of a writ of habeas corpus." (Citations omitted.)
19   "Ciria has failed both prongs of Heck." The Motion to Dismiss
20   further states that the "Complaint does not allege that Ciria's
21   conviction has been vacated, stating instead that he remains
22   incarcerated." (Id., p. 4.)

23

24       **A. The Law Under Heck v. Humphrey.**

25       As the United States Supreme Court has recognized, state
26   prisoners have two potential avenues to remedy violations of their
27   federal constitutional rights; a habeas petition under 28 U.S.C.

28
                                  -2-

1  § 2254, and a civil suit under 42 U.S.C. § 1983. (<u>Heck v.</u>
2  <u>Humphrey</u>, <u>supra</u>, 512 U.S. at 480.) "Of course, while a habeas
3  petition may ultimately secure release, habeas relief is often
4  barred by procedural hurdles. By contrast, a § 1983 suit will
5  not result in release, but is generally not barred by a failure
6  to exhaust state remedies." (<u>Id</u>. at 480-81.)

7  Admittingly, Plaintiff's conviction has not been set aside,
8  however, for the reasons stated below, the doctrine of <u>Heck</u> does
9  <u>not</u> apply.

10

11  ### 1. <u>Preiser</u>, <u>Heck</u>, and Their Progeny.

12  The Supreme Court has attempted to "harmonize the broad
13  language of § 1983, a general statute, with the specific federal
14  habeas corpus statute." (<u>Id</u>. at 491.)

15  The Court first considered the "potential overlap between
16  § 1983 actions and habeas corpus petitions" in <u>Preiser v.</u>
17  <u>Rodriguez</u>, 411 U.S. 475 (1973) and held that "habeas corpus is
18  the exclusive remedy for a state prisoner who challenges the fact
19  or duration of his confinement and seeks immediate or speedier
20  release." (<u>Id</u>. at 487-90.) Later, in <u>Heck v. Humphrey</u>, <u>supra</u>,
21  the Court considered under what circumstances an action for
22  damages pursuant to § 1983 -- in other words, in which the relief
23  requested does not involve immediate or speedier release -- will
24  not lie and must instead by brought as a habeas petition.
25  Sharpening the formula it applied in <u>Preiser</u>, the Court explained
26  that "the decisive issue is 'whether a judgment in favor of the
27  plaintiff would necessarily imply the invalidity of his conviction

28

-3-

1  or sentence. . . .'"   (Id. at 487.)   The Court held that: "If
2  it would, the § 1983 complaint must be dismissed unless the
3  plaintiff can demonstrate that the conviction or sentence has
4  already been invalidated.   But if the district court determines
5  that the plaintiff's action, even if successful, will **not**
6  demonstrate the invalidity of any outstanding criminal judgment
7  against the plaintiff, the action should be allowed to proceed,
8  in the absence of some other bar to the suit." (Ibid.; emphasis
9  in original.)

10  Most recently, the United States Supreme Court in Wilkinson
11  v. Doston, 125 S.Ct., 1242 (2005), reviewed Preiser, Heck, and
12  their progeny, and explained that:

13  "These cases taken together indicate that a state
    prisoner's § 1983 action is barred (absent prior
14  invalidation) -- no matter the relief sought (damages
    or equitable relief), no matter the target of the
15  prisoner's suit (state conduct leading to conviction
    or internal prison proceedings) -- if success in that
16  action would necessarily demonstrate the invalidity
    of confinement or its duration."
17

18  (Id. at 1248; emphasis added.)   Dotson thus erases any doubt that
19  Heck applies both to actions for money damages and to those, like
20  this one, for injunctive relief, and clarifies that Heck provides
21  the relevant test to determine whether § 1983 is a permissible
22  avenue of relief for Plaintiff.   (See e.g. Osborne v. District
23  Attorney's Office, 423 F.3d 1050, 1053 (9th Cir. 2005.)

24

25  **2. Ninth Circuit Court of Appeals Precedent.**

26  In Osborne v. District Attorney's Office, supra, a state
27  prisoner brought a § 1983 action to compel the State to release

28

-4-

1  certain biological evidence that was used to convict him of
2  kidnapping and sexual assault. The United States District Court
3  dismissed the action for failure to state a claim. It ruled that
4  because Osborne seeks to "set the stage" for an attack on his
5  underlying conviction, his § 1983 action is barred by Heck and
6  thus a petition for habeas corpus is his sole remedy. On appeal,
7  Osborne argued that the district court applied a more restrictive
8  standard than that enunciated in Heck, and that his § 1983 claim
9  would not "necessarily imply" the invalidity of his state court
10  conviction. (See, Osborne, supra, at 1051.)

11     In his § 1983 complaint, Osborne alleged that the District
12  Attorney's Office, the District Attorney, the Anchorage Police
13  Department, and Police Chief ... violated his federal
14  constitutional rights by denying him access to evidence for DNA
15  testing.

16     Although the district court recognized that Osborne raises
17  "a direct challenge to [neither] the fact nor duration of
18  imprisonment," it ruled that his claim was Heck-barred because
19  he seeks to "set the stage" to attack his underlying conviction.
20  (Id. at 1053.)

21     The government in Osborne argued that he sought to use §
22  1983 as a discovery device for a later habeas petition, and that
23  allowing him to do so would circumvent habeas procedural
24  requirements and undermine the principles of comity and federalism
25  that Heck protects. "Put simply, the State contends that if a
26  claim can be brought in habeas, it must be brought in habeas."
27  (Osborne, supra, at 1054.)

28

-5-

1    By contrast, Osborne argued that the appropriate question
2    under Heck is not whether he seeks to "set the stage" to attack
3    his underlying conviction, but rather whether success on his §
4    1983 claim "necessarily implies" the invalidity of his
5    conviction." "Though he concedes that he ultimately hopes to
6    establish his innocence, he points out that additional DNA testing
7    my inculpate him, exculpate him, or be inconclusive. And, even
8    if the testing exonerates him, release would come through an
9    entirely different proceeding, either habeas or clemency." (Ibid.)

10   The Ninth Circuit Court of Appeals in Osborne had not yet
11   applied Heck in the context of a § 1983 action seeking
12   post-conviction access to DNA evidence. The Court studied cases
13   from the Fourth, Fifth, and Eleventh circuits that had previously
14   confronted the very question. In joining the Eleventh Circuit,
15   the Osborne Court adopted the reasoning in Bradley v. Pryor, 305
16   F.3d 1287, 1288 (11th Cir. 2002), cert. denied, 538 U.S. 999
17   (2003), which held that a § 1983 action seeking post-conviction
18   action to DNA evidence is not barred. (See also Harvey I 278
19   F.3d at 382 (King, J., concurring in part) ("That act alone --
20   providing Harvey with access to the biological evidence relating
21   to his rape conviction -- does not ... 'necessarily imply' the
22   invalidity of Harvey's conviction or sentence."); Harvey v. Horan
23   (Harvey II), 2285 F.3d 298, 308-09 (4th Cir. 2002) (Luttig, J.,
24   respecting the denial of rehearing en banc) (criticizing the
25   Harvey I majority's application of Heck); see also Osborne, supra,
26   at 1054.)

27   The Osborne Court held that:

28
                              -6-

"It is clear to us, as a matter of logic, that success
in such an action would not 'necessarily demonstrate
the invalidity of confinement or its duration.'  First,
success would yield only **access** to the evidence --
nothing more.  (See Bradley, 305 F.3d a 1290 ('[A
prisoner] prevails in this lawsuit once he has access
to that evidence or an accounting for its absence.').
Second, further DNA analysis may prove exculpatory,
inculpatory, or inconclusive; thus there is a
significant chance that the results will either confirm
or have no effect on the validity of Osborne's
confinement.  (See Harvey II at 308 ('That these
scientific possibilities exist, in and of itself,
suffices to establish that the asserted right of mere
access is not a direct, or for that matter even an
indirect, attack on one's conviction or sentence.')
And third, even if the results exonerate Osborne, a
separate action -- alleging a separate constitutional
violation altogether -- would be required to overturn
his conviction.  (See Bradley 305 F.3d at 1290; emphasis
added.)"

(Id. at pp. 1054-55.)  The Ninth Circuit Court reversed the

judgment of the district court and ordered Osborne's § 1983 action

to proceed, "in the absence of some other bar to the suit."  (Heck,

512 U.S. at 487.)

Somewhat analogous to Osborne, in this case Plaintiff alleges

that the above-named Defendants violated his federal

constitutional rights by denying him access to exculpatory/

exonerating evidence.  As relief, Plaintiff seeks only the

"release of the ... evidence" (id. at 1052) and that the Court

issue an injunction ordering the above-named defendants, the

San Francisco Police Department, and/or its representatives, to

locate, preserve, surrender, and/or account for the loss and/or

destruction of the evidence at issue to the United States District

Court Magistrate assigned to this case.

Success in this endeavor will not "necessarily imply the

invalidity of" Plaintiff's state court conviction or sentence.

-7-

1  (Heck, 512 U.S. at 487; see also Osborne, supra, at 1053.)

2  Indeed, the results of the evidence herein sought "may prove

3  exculpatory, inculpatory, or be inconclusive; thus, there is a

4  significant chance that the results will either confirm or have

5  no effect on the validity of" Plaintiff's "confinement." (Id.

6  at 1054.)

7    And even if the evidence exonerates Plaintiff, "a separate

8  action -- alleging a separate constitutional violation altogether

9  -- would be required to overturn his conviction." (Id. at 1055;

10  citing Bradley, 305 F.3d at 290.)

11    The language used by the Dotson Court is instructive here:

12  "a prisoner's § 1983 action is barred ... **if** success **in that**

13  **action** would necessarily demonstrate the invalidity of confinement

14  or its duration. (Id. at 1248 emphasis added.)   In **this** § 1983

15  **action**, success would not invalidate Plaintiff's conviction or

16  sentence and therefore, is **not** barred by the Heck doctrine.

17

18    **2. Declaratory Relief.**

19    The Motion to Dismiss argues that "Ciria asks the Court to

20  issue a declaratory judgment that defendants violated his rights

21  under Brady v. Maryland, 373 U.S. 83 (1963), during his 1991

22  trial.  Such a ruling would be irreconcilable with his conviction.

23  ...  Therefore the complaint must be dismissed with prejudice

24  under Heck." (See Motion to Dismiss, pp. 4-5.)   The Defendant's

25  reliance on Ybarra v. Reno Thunderbird Mobile Home Village, 723

26  F.2d 675 (9th Cir. 1984), concerning this claim is misplaced.

27    First, the court in Bradley v. Pryor, stated in dicta that

28

1   "an assertion of constitutional right to material and exculpatory
2   information producible under Brady v. Maryland, 373 U.S. 83
3   (1963), has never been thought to necessarily to imply the
4   invalidity of the underlying conviction." Indeed, the United
5   States Supreme Court has ruled in numerous cases that even though
6   the defendant/petitioner's constitutional rights were violated
7   under Brady, the defendant/petitioner was not prejudiced. (See
8   e.g., Strickler v. Greene, 527 U.S. 263, citing Kyles v. Whitley,
9   514 U.S. 419, 433-434 ("[T]he mere possibility that an item of
10  undisclosed information might have helped the defense, or might
11  have affected the outcome of the trial, does not establish
12  'materiality' in the constitutional sense").)

13      Secondly, the court in Ybarra specifically held that:
14  "Because jurisdiction has been established under § 1983, the
15  separate remedy of declaratory judgment is available (citations
16  omitted). A declaratory judgment may be appropriate in a civil
17  rights case in addition to injunctive relief or damages. (Id.
18  at 681.)

19      And finally, Edwards v. Balisok, 520 U.S. 641 (1997), as
20  argued by the Defendants, is factually distinguishable to the
21  instant matter. The Court in Edwards held that "respondent's
22  claim for declaratory relief and money damages, based on
23  allegations of deceit and bias on the part of the decisionmaker
24  that necessarily imply the invalidity of the punishment imposed,
25  is not cognizable under § 1983." (Id. at 648; emphasis added.)
26  The Court did not issue a blanket ruling denying all claims that
27  requested declaratory relief in a § 1983 complaint.

28

The Respondent in _Edwards_, a prison inmate, was found guilty of prison rule infractions and sentenced to the loss of 30 days good time credit he had previously earned toward his release. Alleging that the procedures used in his disciplinary proceeding violated his Fourteenth Amendment due process rights he filed a complaint under 42 U.S.C. § 1983 for a declaration that those procedures were unconstitutional. The principal procedural defect complained of by Respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits. Hence, success on the prisoner's claim for money damages (and the accompanying claim for declaratory relief) would "necessarily imply the invalidity of the punishment imposed." (_Id_. at 648). Nonetheless, the court found that the prisoner's claim for an injunction barring future unconstitutional procedures did **not** fall within habeas exclusive domain. That is because "[o]rdinarily, a prayer for such prospective relief will not "necessarily imply" the invalidity of a previous loss of good-time credits. (_Ibid_.)

Accordingly, the court, under the facts of that case, denied relief.

### 3. The Law.

28 U.S.C. §§ 2201, 2202, provides in relevant part that "[T]he Declaratory Judgment Act gives federal courts the power to 'declare the rights and other legal relations of any interested party seeking such declaration.' An 'actual controversy' between the parties must exist 'although, by the terms of the statute

neither injunctive relief, nor damages need be sought as a condition precedent to obtaining declaratory judgment. Also, in contrast to injunctive relief declaratory relief may be granted even though some other adequate remedy exists."

Applying these principles in _Wilkinson v. Dotson_, 125 S.Ct. 1242 (2005), the High Court granted review for two prisoners that brought an action under § 1983, claiming that state parole procedures were unconstitutional and sought declaratory and injunctive relief. The district court ruled that claims cognizable only under a petition for habeas corpus and dismissed the inmates' claims. Inmates appealed. Following original submission (300 F.3d 661), the United States Court of Appeals for the Sixth Circuit granted rehearing en banc and reversed. (329 F.3d 463.) Certiorari was granted. The Supreme Court held that prisoners could challenge constitutionality of state parole procedures in action under § 1983 seeking declaratory and injunctive relief, and were not required to instead seek relief exclusively under the federal habeas corpus statutes.

Defining the scope of § 1983 actions requesting declaratory relief, the court in _Wilkinson_ stated: "In _Wolff v. McDonnell_, _supra_, the Court elaborated the contours of this habeas corpus 'core.' As in _Preiser_, state prisoners brought a § 1983 action challenging prison officials' revocation of good-time credits by means of constitutionally deficient disciplinary proceedings. (418 U.S. at 553.) The Court held that the prisoners could not use § 1983 to obtain restoration of the credits because _Preiser_ had held that 'an injunction restoring good time improperly taken

1   is foreclosed.' (418 U.S. at 555.) But the inmates could use

2   § 1983 to obtain a declaration ('as a predicate to' their

3   requested damages award) that the disciplinary procedures were

4   invalid. (Ibid.) They could also seek 'by way of ancillary

5   relief an otherwise proper injunction enjoining the prospective

6   enforcement of invalid prison regulations.' (Ibid.) In neither

7   case would victory for the prisoners necessarily have meant

8   immediate release or a shorter period of incarceration; the

9   prisoners attacked only the 'wrong procedures, not ... the wrong

10  result (i.e., the denial of good-time credits).' (Heck, supra

11  at 483 [discussing Wolff])." (Wilkinson v. Dotson, 544 U.S. at

12  80.)

13      In the case now before this court, Plaintiff seeks a

14  declaratory judgment that the above-named defendants violated

15  his constitutional rights by failing to disclose exculpatory

16  evidence. The violative conduct by the defendants interfered with

17  and infringed upon Plaintiff's constitutional rights to prepare

18  and present a defense. The declaratory judgment would further

19  provide that the defendants' actions in failing to disclose

20  exculpatory evidence and knowingly and intentionally permitting

21  Plaintiff to proceed to trial without this evidence, violated

22  his constitutional rights. And finally, if the evidence herein

23  sought has been lost, destroyed, and or otherwise cannot be

24  accounted for, Plaintiff requests a declaration that these actions

25  in failing to adequately protect the safekeeping and recordation

26  of the exculpatory evidence as provided by law, violates

27  Plaintiff's constitutional rights. Quoting Wilkinson, "[I]in

28

-12-

1 | neither case would victory for" Plaintiff "necessarily mean
2 | "immediate release or shorter period of incarceration." Plaintiff
3 | is attacking "only the 'wrong procedures,' not ... the wrong
4 | result" (i.e., his conviction and/or sentence). (See, supra,
5 | ibid.)

6 | Accordingly, requesting a declaratory judgment in this case
7 | would not "necessarily imply the invalidity of" Plaintiff's
8 | conviction or sentence. (See e.g., Heck, supra, at 486-87 fn.
9 | 6 "In order to prevail in this § 1983 action he would have to
10 | negate an element of the offense of which he was convicted.")
11 | However, in the abundance of caution, if this Honorable Court
12 | deems that issuing a declaratory judgment would "necessarily imply
13 | the invalidity of" his conviction and/or sentence, Plaintiff
14 | requests leave of court to amend the Complaint and omit the
15 | issuance of a declaratory judgment and request only an injunction
16 | for the release, preservation, and accountability of the evidence
17 | sought in the Complaint. (See Haines v. Kerner, 404 U.S. 519
18 | (1972).)

19 |

20 | **II. THE COMPLAINT WHICH RELATES TO CONDUCT MORE THAN**
21 | **SIXTEEN YEARS OLD, IS NOT BARRED BY THE STATUTE OF**
    | **LIMITATIONS.**

22 | The Court in United States v. Kubrick (1979) 444 U.S. 111,
23 | held that "for a cause of action to accrue, it is critical that
24 | the plaintiff know that he has been hurt and who inflicted the
25 | injury. Once imputed with that knowledge, the plaintiff is on
26 | inquiry notice, imposing on him a duty to inquire about the
27 | details of negligence that are reasonably discoverable." (Id.

28 |

at 122-124; see also Nasim v. Warden, 64 F.3d 951, 955 (4th Cir.

1995)("Thus, for purpose of a § 1983 claim, a cause of action

accrues either when the plaintiff has knowledge of his claim or

when he is put on notice -- e.g., by the knowledge of the fact

of injury **and** who caused it -- to make reasonable inquiry and

that inquiry would reveal the existence of a colorable claim");

emphasis add.)

In analyzing the accrual period, the Court in Kubrick stated

in fn. 7 that:

> "In Urie v. Thompson, 337 U.S. 163 (1949), the Court
> held that a claim under the Federal Employee's Liability
> Act did not accrue until the plaintiff's injury
> manifested itself. In that case, plaintiff Urie
> contracted silicosis from his work as a fireman on a
> steam locomotive. His condition was diagnosed only
> in the weeks after he became too ill to work. The court
> was reluctant to charge Urie with the 'unknown and
> inherently unknown' and held that 'because of his
> blameless ignorance' of the facts of his injury, his
> claim did not accrue under the Federal Employee's
> Liability Act until his disease manifested itself."
> (Id. at 169-70.)

And in Skwira v. U.S., 344 F.3d 64, 79, the government

advocated for a rule such as that the plaintiffs were aware of

their injury **and** its cause when the body of the murdered courier

was found.  Hence, the claim accrued at that point.  Rejecting

this argument, the court held that under the circumstances of

that case, the plaintiff's claim accrued at the time of the

indictment against the former agents because the plaintiff's did

not know, nor in the exercise of reasonable diligence, could have

known of the custom's criminal acts until the time of their

indictment."  Aside from this information, "plaintiffs has no

other source of information regarding the whereabouts of their

-14-

1  couriers and that the plaintiff's were not privy to the police
2  investigation."

3      Here, Plaintiff did not become "aware of the his injury <u>and</u>
4  its cause" until May 2006, when he was informed by a fellow inmate
5  that: (i) the surveillance of Plaintiff conducted by Nicholas
6  J. Rubino and unnamed DOES 1 - 10, undercover San Francisco Police
7  officials, was required to be recorded, reported, logged, and/or
8  documented for the purpose(s) of maintaining evidence and possible
9  court proceedings; (ii) Defendant's Crowley and Gerrans took notes
10  of the witnesses they interviewed at Galan's  Bar on April 18,
11  1990, concerning Plaintiff's appearance, and the approximate time
12  he was at the bar; (iii) Crowley and Gerrans possessed evidence
13  that Plaintiff use to drive a red Firebird which was traded two
14  and a half months before the shooting on March 25, 1990, and
15  before Crowley and Gerrans became involved in the murder
16  investigation; (iv) Crowley possessed evidence that on the night
17  of March 25, 1990, Plaintiff was wearing a jeri curl hair style;
18  (v) because of this evidence, Crowley chose a "mug shot" of
19  Plaintiff with a jeri-curl to include in a photo line-up to show
20  the eye-witnesses; (vi) Crowley and Gerrans conducted a lineup
21  with six black males with afros even though Crowley possessed
22  evidence that Plaintiff had a jeri-curl on the night of the
23  shooting; and, (vii) Crowley, Gerrans, Rubino, and unnamed DOES
24  1 - 10, met, discussed, and exchanged information concerning
25  Plaintiff, the vehicles he drove, where he lived, and his
26  appearance. (See e.g., Exhibits in Support of Complaint, 42
27  U.S.C. § 1983, Declaration of Joaquin Ciria,  pp. 6-7 ("while

28

1   the petition was pending in the California Supreme Court, I
2   remembered the numerous encounters with Rubino. I was not aware
3   of the significance of the police following me during the times
4   herein mentioned.   I described what took place to the inmate
5   helping me and discovered the existence of the surveillance
6   reports, which is the subject of this complaint"); see also
7   Exhibits B, p. 2; C; F, p. 16, 26-27, 29, 30.)

8         Applying the law of accrual to this case, it is apparent
9   that Plaintiff did not "possess sufficient facts about the harm
10  done to him" (Kubrick, supra, at 122) until he was informed of
11  the foregoing. Plaintiff did not assert in this Complaint, nor
12  does he now, that ignorance of the law tolls the accrual period.
13  Rather, that the facts underlying his claims, were "unknown or
14  unknowable until the injury manifested itself; and the facts about
15  causation" were "unavailable . . . or at least very difficult
16  to obtain."   (Id., at 122.)

17        Accordingly, the claims are not barred by the statute of
18  limitations.

19

20  **A. The Law Of Imputation Does Not Apply To This Case.**

21        The Defendants contend that because Plaintiff was represented
22  by court-appointed counsel at the time the injury occurred,
23  defense counsel's knowledge is imputed to the plaintiff.   (See
24  Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994)(holding that
25  counsel's knowledge of facts regarding allegedly tainted lineup
26  were imputed to the plaintiff.")   (Motion To Dismiss, p. 7.)
27  Despite citing a correct legal theory, the doctrine of imputation

28
                              -16-

1 | does not apply to this case.

2 | In order to successfully argue the doctrine of imputation,
3 | the Defendants must prove that defense counsel indeed possessed
4 | information that the above-named Defendants withheld the specific
5 | items of evidence sought in the Complaint. The trial court record
6 | is devoid of such a finding.

7 | Indeed, the court in Veal provided that "[A] person has
8 | notice of a fact if his agent has knowledge of the fact, reason
9 | to know it, or has been given notification under the circumstances
10 | coming within the rules applying to the liability of a principal
11 | because of notice to his agent. For these purposes, 'knowledge'
12 | means a belief in the truth of a proposition." The Court
13 | concluded that "it is undisputable that the attorney attended
14 | both the first state-court Wade hearing at which details were
15 | disclosed of the events on which Veal now relies for its cause
16 | of action. Having heard testimony, Veal's attorney knew the
17 | predicate facts giving rise to Veal's present claim, and under
18 | traditional principles of agency, the attorney's knowledge must
19 | be imputed to Veal." (Id. at 725.)

20 | Plaintiff's counsel was not aware of the surveillance and
21 | attendant  records/reports prepared by Rubino and unnamed DOES
22 | 1 - 10. Moreover, he did not possess the knowledge that Crowley
23 | and Gerrans  withheld the witness statements they took at Galans'
24 | Bar. Hence, defense counsel did not have notice of the "predicate
25 | facts giving rise to" Plaintiff's present claim.

26 | Finally, by its very definition, a Brady violation is the
27 | withholding of exculpatory or impeachment evidence from the

28

1  defense. At no time was a hearing held in this matter disclosing
2  the "predicate facts" of Plaintiff's cause of action.  And since
3  the above-named Defendants failed to release the exculpatory and
4  impeachment evidence, neither Plaintiff nor his attorney can be
5  charged "with the 'unknown and inherently unknown . . .'"
6  (Kubrick, supra.)

7  Accordingly, the doctrine of imputation does not apply to
8  the instant matter.

9

10  **B. Duty Of Disclosure.**

11  The Defendants also allege that "the Complaint must be
12  dismissed" as it "fails to state a colorable Brady claim because
13  as investigating officers, defendants have no liability under
14  Brady." (See, Motion to Dismiss, p. 7.)  However, the Motion
15  to Dismiss then states that "[T]he officers' only obligation is
16  to disclose evidence to the prosecutor." (Ibid.)  Consequently,
17  a "colorable Brady claim" does indeed exist if the Defendants
18  failed to surrender the exculpatory and impeachment evidence
19  sought in the § 1983 petition; a fact not disputed by the
20  Defendants in their responsive pleadings.

21  The law as held in McMillan v. Johnson, 88 F.3d 1554 (11th
22  Cir. 1996), cited by the Defendants, is instructive here.  Law
23  enforcement officials in McMillan did not dispute that an
24  investigator has a duty under Brady to turn exculpatory and
25  impeachment evidence over to the prosecutor.  Nor did they dispute
26  that the evidence that they allegedly suppressed was Brady
27  material.

28

-18-

1      Instead, one defendant argued that he had reason to believe

2  that the prosecutor knew about the exculpatory and impeachment

3  evidence because the prosecutor's investigator knew of the

4  evidence. The two remaining defendants argued that Brady did not

5  require them to turn the evidence at issue over to the prosecutor

6  in the circumstances of the case. (See Id. at 1567.)

7      The Court held that "[I]nvestigators satisfy their obligation

8  under Brady when they turn exculpatory and impeachment evidence

9  over to the prosecutor." (Citing Walker v. City of New York,

10  974 F.2d 293, 299 (2d Cir. 1992); Jones v. City of Chicago, 856

11  F.2d 985, 995 (7th Cir. 1988).) "If they have reason to believe

12  that the prosecutor already has the exculpatory and impeachment

13  evidence, though, investigators have no duty to disclose the

14  evidence." (Ibid.; citing Kelly v. Curtis, 2 F.3d 1544, 1552

15  (11th Cir. 1994).) The Court ruled that all the defendants were

16  in violation of failing to disclose the exculpatory and

17  impeachment evidence to the prosecutor.

18      In so holding, the Court, citing Freeman v. State of Georgia,

19  599 F.2d 65, 69, (5th Cir. 1979), added:

20      "The police are also part of the prosecution, and the
       taint on the trial is no less if they, rather than the
21      State's attorney, were guilty of the nondisclosure .
       . . The duty to disclosure [sic] is that of the state,
22      which ordinarily acts through the prosecuting attorney;
       but if he too is the victim of police suppression of
23      the material information, the state's failure is not
       on that account excused." (Id., 69-70.)
24

25  (See also, United States v. Antone, 603 F.2d 566, 569-70 (5th

26  Cir. 1979)(imputing knowledge of state investigators to federal

27  prosecutors in determining whether there was a Brady violation).)

28

1    In reaching the issue of a "colorable claim," the McMillan
2  Court held that the defendant-police "officers had a clearly
3  established duty under Brady to not intentionally withhold
4  exculpatory and impeachment evidence from the prosecutor."
5  (Citing Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir.
6  1988).)  Thus, McMillan concluded that "pre-existing law in this
7  circuit clearly established that withholding Brady material from
8  the prosecutor, and thus preventing its disclosure to the defense,
9  violates due process rights."

10   In the case now before this Court, Plaintiff clearly stated
11  that the Defendants withheld exculpatory evidence. As in
12  McMillan, here, the Defendants were duty bound under Brady to
13  turn exculpatory and impeachment evidence over to the prosecutor
14  because of clearly established United States Supreme Court
15  precedent. (See Brady v. Maryland, supra, 373 U.S. 83.; see also
16  Strickler v. Whitley, 527 U.S. 263.)

17   Accordingly, the Complaint does indeed state a colorable
18  Brady claim because as investigating officers, the Defendants
19  "had a clearly established duty under Brady to not intentionally
20  withhold exculpatory and impeachment evidence from the
21  prosecutor."

22

23   **C. Official Capacity Claim.**

24   The Defendants claim that even if Plaintiff had sued a
25  current City employee in his or her official capacity, that suit
26  would merely be one against the City." (Citations omitted.)
27  "But Ciria has failed to state a claim against the City because

28

-20-

the Complaint contains no allegation that 'the individual officers' conduct conformed to official policy, custom, or practice.'" (Motion to Dismiss, p. 7.)   The Defendants misapply the law to the facts of Plaintiff's § 1983 claims.

In Whitaker v. Garcetti, 486 F.3d 572 (9th Cir. 2007), the Court explained that "[W]hen an individual sues a local government for violation of a constitutional right, the municipality is liable if the individual can establish that the local government 'had a deliberate policy, custom, or practice that was the "'moving force'" behind the constitutional violation he suffered." (Id. at 581, citing Galen v. County of Social Services, 436 U.S. 658, 694-95; emphasis added.)   The Whitaker Court added that "[A] public official is liable under § 1983 if he causes the plaintiff to be subjected to deprivation of his constitutional rights." (Id. at 582.)

The Complaint clearly alleges the Defendants acted in their individual and official capacity and therefore are sued in both their individual and official capacities. (See e.g., Romans v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999)(stating a strong presumption in favor of a personal capacity suit where an official capacity suit for damages would be barred).)

The Complaint does not theorize that the City of San Francisco "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violations he suffered." (Whitaker, supra, at 581.)   Instead, the Complaint named the public officials, i.e., Defendants and unnamed DOES 1 - 10, who are liable under § 1983 that caused  Plaintiff to

-21-

1   be  subjected  to  the  deprivation  of  his  constitutional  rights.

2   Hence,  the  Defendants'  argument  misapplies  the  law  to  the

3   facts  of  this  case  concerning  an  "official  capacity  suit"  and

4   cannot  survive  scrutiny.

5

6   **D. Dismissal Because of Retirement.**

7   The  inmate  assistant  helping  Plaintiff  with  his  legal  papers

8   was  unable  to  locate  any  case  law,  federal  or  otherwise,  ruling

9   that  a  § 1983  cause  of  action  "must  be  dismissed  because  the"

10  Defendants  "have  retired"  as  argued  in  the  Motion  to  Dismiss,

11  citing  Zach v. California Public Utilities Comm'n.  Although  Zach

12  v. California  is  not  available  at  the  institution  law  library,

13  it  appears  this  case  addressed  **official capacity suits**  as  opposed

14  to  personal  capacity  suits.  Thus,  assuming  arguendo  that  Zach

15  is  "good  law,"  it  does  not  apply  to  the  instant  matter  inasmuch

16  as  this  § 1983  petition  includes  a  personal  capacity  suit  for

17  each  named  and  unnamed  Defendants.

18

19  **E. Service of Named Defendants**

20  Plaintiff  received  answers  to  Interrogatories  from  the  Deputy

21  City  Attorney.  Plaintiff  must  presume  the  City  Attorney's  Office

22  has  located  the  named  Defendants,  nevertheless,  Plaintiff  has

23  not  received  notice  as  to  which  Defendants  have  been  properly

24  served.

25  Moreover,  the  Motion  to  Dismiss  claims  that  the  "City  has

26  been  unable  to  identify  Officer  Aissa  as  a  current  or  former

27  employee  of  SFPD."  (Motion  to  Dismiss,  p. 3;  see also  Declaration

28

-22-

1 | of Daniel  A. Zaheer ¶¶ 3-4.)

2 | The Exhibits accompanying the § 1983 Complaint clearly names
3 | Officer Aissa as a San Francisco Police Officer.  (See Exhibit
4 | B, p. 2 ("Off. Aissa # 218 and I surveiled [sic] the residence.
5 | At approx. 1147 we observed the suspect drive up in described
6 | vehicle. Suspect Ciria was placed under arrest without incident.
7 | . . .  ¶  Suspect booked by Off. Aissa at C.J. per request of
8 | inspectors").)

9 | Exhibit B clearly establishes that: (i) Defendant Rubino
10 | and Defendant Aissa were surveilling Plaintiff's residence; (ii)
11 | Defendant Rubino knew of and worked alongside with Defendant
12 | Aissa; (iii) Defendant Aissa booked Plaintiff into the San
13 | Francisco County Jail Facility on April 9, 1990; (iv) Defendant
14 | Aissa booked Plaintiff into the county jail facility per request
15 | of the Inspectors, i.e., Defendants Crowley and Gerrans; (v)
16 | Defendant Aissa knew of and/or worked with Defendants Crowley
17 | and Gerrans; and, (vi) Defendant Aissa could **not** have "booked"
18 | Plaintiff into the San Francisco County Jail Facility unless he
19 | [Defendant Aissa] was a duly authorized California law enforcement
20 | official.

21 | Exhibit B is a copy of the San Francisco Police Department
22 | Incident Report, authored by Defendant Nicholas J. Rubino on
23 | April 19, 1990, and is irrefutable proof that Officer Aissa (badge
24 | no. 218) was employed by the San Francisco Police Department
25 | during the relevant times mentioned in Plaintiff's § 1983 cause
26 | of action.

27 | With the unlimited resources available to the City Attorney's

28 |

-23-

Office, it seems incredulous, and indeed, somewhat disingenuous, that the retired named Defendants and Officer Aissa have not been located. For these reasons, Plaintiff requests the Court issue an order directing the City Attorney to submit to the court, **NOT** to the Plaintiff, all legal papers, documents, records, reports, evincing the "reasonable efforts" employed to locate the named Defendants. The Plaintiff, imprisoned in the California Department of Corrections and Rehabilitation, obviously cannot, nor does he have the resources to, locate and properly serve all the Defendants in this matter.

///

///

///

///

-24-

# C O N C L U S I O N

For the foregoing reasons, consistent with these Memorandum of Points and Authorities, the Defendants' Motion to Dismiss should be denied.

Moreover, and as requested above, this Honorable Court should issue an order directing the City Attorney's Office to produce all papers establishing their ongoing "reasonable efforts" to locate and properly serve the Defendants as initially ordered by this Court on October 12, 2007. (See Order of Service, p. 2.)

Dated: *MARCH 29, 2008*

Respectfully submitted,

by: *Joaquin Ciria*

JOAQUIN CIRIA
Plaintiff In Pro Se

///
///
///
///

-25-

**DECLARATION OF SERVICE BY MAIL**

**[28 U.S.C. § 1746]**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JOAQUIN CIRIA,                    )      Case No. C 07-4770 MJJ(PR)
                                  )
                     Plaintiff,   )
                                  )
vs.                               )      DECLARATION OF
                                  )      SERVICE BY MAIL
NICHOLAS J. RUBINO, et al,        )
                                  )
                     Defendants.  )      [28 U.S.C. § 1746]
_____)

I, **MARCOS ROGELIO JUAREZ,** am a resident of the state of California, county of Solano. I am over the age of 18 years and not a party to the above-entitled cause of action. My prison address is: Solano State Prison, Post Office Box 4000, Vacaville, California 95696-4000. My prison identification is: C.D.C. No. J-91449.

On March 29, 2008, I served the foregoing: Plaintiff's Motion In Opposition to Defendant's Motion to Dismiss, on the Defendant's attorney named below, by placing one true and correct copy thereof, in a sealed envelope with postage fully paid thereon, and delivering said envelope and above-described legal papers to a duly authorized California Corrections Officer, as prescribed and so provided for the deposit of legal mail in the United States Mail at Solano State Prison.

        City Attorney of San Francisco
        Attn: Daniel Zaheer, D.C.A.
        1390 Market Street, 6th Floor
        San Francisco, California 94102-5408

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, and that this declaration was executed at Solano State Prison, in Vacaville, California.

                              by: _____
                                  MARCOS ROGELIO JUAREZ
                                  Declarant

///