DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
DANIEL ZAHEER, State Bar #237118
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3822
Facsimile:    (415) 554-3837
E-Mail:       daniel.zaheer@sfgov.org

Attorneys for Defendant
CITY & COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| JOAQUIN CIRIA, | Case No. C07-4770 MMC |
|---|---|
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| NICHOLAS J. RUBINO, OFFICER AISSA, JAMES CROWLEY, ARTHUR GERRANS AND DOES 1-10 INCLUSIVE, | Judge:       Maxine M. Chesny<br>Trial Date:  Not Set |
| Defendants. | |

      Plaintiff's complaint is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). The opposition brief's arguments that *Heck* does not apply rest on a misreading of relevant case law. The Complaint pleads only a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), which is barred by the *Heck* doctrine as set forth by binding Ninth Circuit precedent. Moreover, even if the Complaint is not barred by *Heck*, it nonetheless is untimely and fails to state a claim upon which relief can be granted. Accordingly, the City respectfully requests that the Court dismiss the Complaint without leave to amend.

## I. THE COMPLAINT IS BARRED BY THE DOCTRINE OF *HECK V. HUMPHREY*.

Plaintiff argues that *Heck* does not apply to the extent that he seeks only the remedy of an injunction ordering release and preservation of evidence relating to his criminal case. *See* Oppo Br. at 8 (arguing that his request for such an order "will not 'necessarily imply the invalidity of' his conviction"). Plaintiff's argument in this regard relies upon a misunderstanding of the distinction between rights and remedies which, once corrected, disposes of the opposition. In order to be due relief under section 1983, plaintiff first must show that a specific statutory or constitutional right has been violated. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred"). The Complaint and the Opposition Brief identify only a single right that was violated: plaintiff's pre-trial right to exculpatory evidence under *Brady*. The Ninth Circuit has plainly held, however, that in order to vindicate this right under section 1983 a plaintiff must satisfy the *Heck* prerequisite of first invalidating his conviction through habeas corpus. *See Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675 (9th Cir. 1984).

Plaintiff misreads *Osborne v. District Attorney's Office*, 423 F.3d 1050 (9th Cir. 2005). Contrary to plaintiff's suggestion, *Osborne* does not hold that *Heck* is inapplicable to all section 1983 actions seeking the remedy of evidence production. Instead, *Osborne* focused on the plaintiff's novel claim "that by refusing him *post-conviction* access to the evidence, the State has violated his constitutional rights under the First, Sixth, Eighth, and Fourteenth Amendments."[1]  *Id.* at 1051 (emphasis added). The plaintiff in *Osborne* did not argue that DNA evidence implicating him had been withheld at the time of his trial, thus violating his *Brady* rights. Instead, Osborne claimed that *after* he was convicted the defendant had unconstitutionally denied him access to the DNA evidence. It was thus plain that Osborne's claim did not require a ruling on the validity of his conviction because Osborn had not alleged – and was not required to prove – that the DNA evidence was

---

[1] The court noted that the district court did not reach "the question of whether there exists a constitutional right of post-conviction access to DNA evidence" but instead assumed such a claim was valid and dismissed on *Heck* grounds. *Osborne*, 423 F.3d at 1051. The Ninth Circuit likewise expressed no opinion regarding whether such a constitutional right exists. *See id.* at 1056.

1  unlawfully suppressed at the time of trial.  *See Osborne*, 423 F.3d at 1054 ("*Heck* does not bar a

2  prisoner's § 1983 action seeking *post-conviction* access to biological evidence in the government's

3  possession." (emphasis added)).  Indeed, the core of Osborne's claim was that the type of DNA

4  testing he sought to have conducted "was [not] available at the time of his trial," *id.* at 1052, and that

5  he had a constitutional right to take advantage of new technological developments that might have

6  exonerated him.

7       Here, plaintiff's complaint is premised on an entirely different constitutional right.  Plaintiff

8  does not argue that he has a constitutional right to the post-conviction release of evidence.  Instead, he

9  makes an ordinary *Brady* claim, i.e. that "[d]efendants violated his federal constitutional rights by

10  denying him access to exculpatory/exonerating evidence" at the time of his trial.  *See* Oppo. Br. at 7;

11  *id.* at 12 ("The violative conduct by the defendants interfered with and infringed upon Plaintiff's

12  constitutional rights to prepare and present a defense."); *see also* Complaint ¶ 32 (alleging that

13  defendants violated his rights under the Constitution in that "the government must disclose all

14  exculpatory and exonerating evidence to the defense *prior to trial*" (emphasis added)).  Unlike the

15  claim made in *Osborne*, plaintiff's claim necessarily implies the invalidity of his conviction.  This

16  Court could not simultaneously hold that plaintiff's *Brady* rights were violated and thus plaintiff is

17  entitled to remedies under section 1983 while also holding that plaintiff's conviction need not be

18  vacated.

19       Plaintiff is wrong in arguing that success on his *Brady* claim does not necessarily imply the

20  invalidity of his conviction.  As noted, the Ninth Circuit held to the contrary in *Ybarra*.  Explaining

21  that the plaintiff, Ybarra, "seeks declaratory relief that, under *Brady*, [defendant] has violated his right

22  to a fair trial," the court held that "[a]lthough [Ybarra] does not specifically request release, the

23  finding of such declaratory relief in his favor would show that release was required."  *Id.* at 682

24  (citing *Prieser v. Rodriguez*, 411 U.S. 475, 500 (1973)).  Accordingly, "in order to prevail on this

25  claim, he must collaterally void his state court conviction." *Id.  Ybarra* has not been undermined or

26  overruled by subsequent precedent, and therefore is binding authority.  Nor is the Ninth Circuit alone

27  in holding that the *Heck* doctrine applies to *Brady* claims.  *See Amaker v. Weiner*, 179 F.3d 48, 51 (2d

28

1  Cir. 1999) (holding that a *Brady* claim "does indeed call into question the validity of [plaintiff's]
2  conviction [and] is barred by *Heck*").
3        Plaintiff attempts to avoid *Ybarra* by arguing that a *Brady* violation does not require the
4  invalidation of a conviction because he does not need to show prejudice in order to obtain relief under
5  section 1983. However, the underlying assumption of plaintiff's argument – that he would be due
6  declaratory and/or injunctive relief under section 1983 even if the alleged withholding of exculpatory
7  evidence did not prejudice the outcome of his trial – is simply incorrect. There is no difference
8  between showing a *Brady* violation for section 1983 purposes and showing a *Brady* violation to
9  invalidate a conviction.[2] Whichever relief is sought, "there is never a real '*Brady* violation' unless
10 the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence
11 would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Simply
12 put, there is no *Brady* violation unless there is prejudice. *See id.* ("There are three components of a
13 true *Brady* violation: [1] The evidence at issue must be favorable to the accused . . . [2] that evidence
14 must have been suppressed by the State . . . [3] *and prejudice must have ensued.*" (emphasis added)).
15       Ciria also misleadingly quotes *Bradley v. Pryor*, 305 F.3d 1287, 1291 (11th Cir. 2002), which
16 quoted in dicta a statement by one judge from another circuit in a concurrence to a denial of rehearing
17 en banc. *See id.* (quoting *Harvey v. Horan*, 285 F.3d 298, 307-08 (4th Cir. 2002) (Luttig, J.,
18 concurring in denial of reh'g en banc)). In that passage, Judge Luttig was making the uncontroversial
19 statement that "an *assertion* of [the] constitutional right to material and exculpatory information
20 producible under *Brady* . . . has never been thought necessarily to imply the invalidity of the
21 underlying conviction." *Id.* (emphasis added). Of course, an accused's *pre-trial* demand that the
22 prosecution disclose *Brady* evidence before trial does not necessarily implies the invalidity of the

---

[2] Defendants have not found any case discussing the standard for establishing a *Brady* violation for purposes of a section 1983 suit. As discussed in the opening brief, such claims are typically brought against the prosecutor that has the *Brady* obligation. However, a section 1983 suit against the prosecutor is almost always barred by absolute immunity. *See Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003). Because such claims rarely make it past the pleadings stage, no court has apparently ever had the opportunity to explain the requisite showing. However, as argued, there is no basis for changing the *Brady* requirements when the plaintiff seeks money or declaratory relief, rather than habeas relief.

conviction.  However, when a convict makes a *post-conviction* section 1983 claim for declaratory and injunctive relief based upon *Brady*, that is more than a mere "assertion" before trial, and the plaintiff must show a "true" *Brady* violation as set forth in *Strickler*, i.e. favorable evidence that was withheld and caused prejudice to the plaintiff.  Moreover, *Bradley* rests upon the same assumption as does *Osborne* – that *if* there exists a constitutional right to post-conviction release of evidence, *then* a claim based upon such a right would not be barred by *Heck*.  See *Bradley*, 305 F.3d at 1292 (Birch, J., specially concurring) (noting that "I am inclined to affirm [because] the petitioner does not enjoy a substantive or procedural due process right to the relief he seeks" but noting that further briefing would help flesh out that question).[3]  Judge Luttig agreed that the right at issue was not one under *Brady*.  See *Harvey*, 285 F.3d at 310 ("The asserted right at issue is not one to material exculpatory evidence necessary to ensure a fair trial." (citing *Brady*, 373 U.S. at 83)).  Finally, in any event, even if Judge Luttig's statement carried the meaning suggested by Ciria it would make no difference because it would not overrule *Ybarra*, which still provides the binding rule in this Circuit.

## II.   PLAINTIFF CANNOT SALVAGE THE COMPLAINT THROUGH AMENDMENT.

Plaintiff argues that his complaint could be saved through amendment to exclude his request for a declaratory judgment.  Oppo. Br. at 13.  For the reasons noted above, even a stand-alone claim seeking only an evidence release injunction would be barred by *Heck*.  Moreover, plaintiff should not be permitted to amend his complaint to plead an *Osborne*-type claim alleging a violation of a putative post-conviction constitutional right to access evidence.  Such a claim would rest on entirely different factual and legal foundation than the allegations set forth in the Complaint and would not be properly brought against the retired officer defendants in this lawsuit.  The defendants here are not responsible for the maintenance and release of records regarding cases they investigated nearly twenty years ago prior to their retirement.  Moreover, such a claim would not be ripe because plaintiff has not yet

---

[3] Judge Luttig argued that a new constitutional right should be recognized – though limited solely to release of evidence for DNA testing.  *See Harvey*, 285 F.3d at 305-06 (Luttig, J., concurring in denial of reh'g en banc) (arguing that technological advances in DNA testing was the "evidentiary equivalent of 'watershed' rules of constitutional law" and thus warranted recognition of a new constitutional right "of access to DNA evidence post-conviction").  Here, Ciria does not claim he wishes to subject any evidence to DNA testing.

1  requested the evidence from the person or entity that maintains such records.  One proper method of
2  obtaining such evidence is by filing a habeas corpus petition and satisfying the discovery
3  requirements within such proceeding.  *See, e.g. Pham v. Terhune*, 400 F.3d 740, 742-43 (9th Cir.
4  2005) (discussing discovery request for evidence supporting a *Brady* claim, which was made under
5  Rule 6(a) of the Federal Rules Governing Section 2254 cases).  *Heck* requires that plaintiff follow
6  such procedures and forecloses plaintiff's attempt to avoid them through a section 1983 action.

**III.    THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS.**

As noted in defendant's opening brief, *Heck* applies and therefore plaintiff's claim has not yet accrued.  However, if *Heck* does not apply, plaintiff's claim is barred by the statute of limitations.

Plaintiff's claim is time barred because, according to the complaint, the only new discovery he made in May 2006 was a discovery about his legal rights under *Brady*.  In the opposition brief, Ciria lists several factual "discoveries" which he claims also did not come to light until May 2006.  *See* Oppo. Br. at 15.  However, each of these facts were either known to Ciria at the time of his 1991 trial or should have been discovered through reasonable diligence.  *See, e.g.*, *Bartelson v. United States*, 96 F.3d 1270, 1277 (9th Cir. 1996) (holding that the discovery rule sets the date of accrual as when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause").

First, Ciria states that he discovered in May 2006 that alleged surveillance of him before his arrest "was required to be recorded."  Oppo. Br. at 15.  Ciria does not argue that he did not know at the time that he was being watched by police, *cf.* Complaint ¶ 17 (alleging that before April 19, 1990, "Plaintiff witnessed Rubino following him on numerous occasions"), but rather that he only discovered in 2006 that records should have been prepared based upon that surveillance.  This constitutes nothing more than ignorance of police procedures which could have been discovered by the exercise of diligence and would have been known to Ciria's defense counsel – whose knowledge is imputed to Ciria.[4]  *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994).  Plaintiff's second factual

---

[4] Although Ciria would be right that facts not known to his lawyer would not be imputed to him, *see* Oppo. Br. at 17-18, as noted above he has failed to identify any fact that would not be known either to him or to his attorney had they exercised diligence at the time of trial.

1   "discovery" fails for the same reason.  Plaintiff does not argue that he did not know that Crowley and
2   Gerrans interviewed people at Galan's Bar, *cf.* Complaint ¶ 29 ("Plaintiff informed the detectives that
3   he had seen them the night before, April 18 [1990], at Galan's Bar talking with patrons"), but rather
4   that he did not know that they would have taken notes.  This too is not a newly available fact that
5   triggers the discovery rule.

6   Ciria's third factual predicate, that he discovered that two defendants knew that he traded a
7   red Pontiac Firebird before the murder, is nonsensical. Plaintiff obviously knew in 1990 that he traded
8   the car, *see* Complaint ¶ 18, and thus if that fact were exculpatory he and his lawyer could have
9   brought it to the jury's attention at the time of trial.  Plaintiff also knew that the officers were aware
10  that he no longer drove the Firebird, as he alleges that he was arrested while driving a different car.
11  *See* Complaint ¶ 19.  Similarly, the fourth factual discovery – that Crowley had evidence that plaintiff
12  had a jeri curl on the night of the murder – is not exculpatory or new because Ciria knew in 1990
13  what hairstyle he had on the night of the murder.  Ciria's next factual discovery, that Crowley's
14  knowledge of plaintiff's hairstyle led him to concoct an unfairly suggestive lineup, is not new to
15  Ciria, who had access to the lineup photos at the time of his trial and could have used them then to
16  argue that the lineup was tainted by the hairstyle issue.  Ciria's final "discovery" – that the officers
17  "met, discussed and exchanged information concerning" plaintiff's case is a truism that was
18  obviously known to him and his lawyer at the time of his trial.

### IV. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Recognizing that the *Brady* claim alleged in the complaint fails because the defendant officers had no obligation to disclose evidence directly to him, Oppo. Br. at 18-19, Ciria instead argues around the allegations in the Complaint by contending that his *Brady* claim rests on the officers' failure to turn over evidence to the prosecutor.  However, even if Ciria had alleged such a claim, it would nonetheless fail because defendants are absolutely immune with regard to conduct occurring after probable cause has been established that constitutes a judicial or quasi-judicial function.  *See Broam*, 320 F.3d at 1033-34.  Here, even assuming defendants did not turn over some exculpatory evidence to the prosecutor, such conduct would have occurred after plaintiff was arrested, and thus

after probable cause had been established. *See id.* The officers' decision to turn over particular evidence to the prosecutor in order to comply with their *Brady* obligations is neither an investigatory nor an administrative act and therefore they are afforded absolute immunity with regard to that conduct. *See id.*

Even if the officers are not absolutely immune for their activities in aiding the prosecution of Ciria's case, Ciria's official capacity claim against them fails because they have retired. And, to the extent Ciria pleads an official capacity cause of action against the City, such cause of action fails because Ciria has not alleged – nor could he prove – that the alleged withholding of exculpatory evidence was the result of an official policy, custom or practice. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). Ciria admits this by stating that "[t]he Complaint does not theorize that the City of San Francisco 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation suffered." Oppo. Br. 21. Accordingly, Ciria's official capacity suit fails.

## V.   STATUS OF SERVICE.

Since the City's motion to dismiss was filed, the City has located all of the individual named defendants in this lawsuit. However, those individuals have not yet been served. As noted in the opening brief, service will be unnecessary if the Court grants the motion to dismiss.

## CONCLUSION

For all the foregoing reasons, defendant respectfully requests that the Court grant the motion to dismiss without leave to amend.

Dated:  April 16, 2008

DENNIS J. HERRERA
City Attorney
JOANNE HOEPER
Chief Trial Deputy
DANIEL ZAHEER
Deputy City Attorney


By:_____s/Daniel Zaheer_____
       DANIEL ZAHEER

Attorneys for Defendant(s)
CITY AND COUNTY OF SAN FRANCISCO

# PROOF OF SERVICE

I, Pamela Cheeseborough, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Fifth Floor, San Francisco, CA 94102.

On April 16, 2008, I served the following document(s):

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

on the following persons at the locations specified:

Joaquin Ciria
Plaintiff In Pro Se
E-89966 Facility 2-12-117
C.S.P. – Solano State Prison
Post Office Box 4000
Vacaville, CA 95696

in the manner indicated below:

☒ **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☐ **BY PERSONAL SERVICE**: I sealed true and correct copies of the above documents in addressed envelope(s) and caused such envelope(s) to be delivered by hand at the above locations by a professional messenger service. **A declaration from the messenger who made the delivery** ☐ **is attached** or ☐ **will be filed separately with the court.**

☐ **BY OVERNIGHT DELIVERY**: I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and delivery by overnight courier service. I am readily familiar with the practices of the San Francisco City Attorney's Office for sending overnight deliveries. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be collected by a courier the same day.

☐ **BY FACSIMILE**: Based on a written agreement of the parties to accept service by fax, I transmitted true and correct copies of the above document(s) via a facsimile machine at telephone number Fax #' to the persons and the fax numbers listed above. The fax transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine, and **a copy of the transmission report** ☐ **is attached** or ☐ **will be filed separately with the court**.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed April 16, 2008, at San Francisco, California.

                                    s/Pamela Cheeseborough
                                    Pamela Cheeseborough