IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAQUIN CIRIA, | No. C 07-4770 MMC (PR) |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS; DENYING LEAVE TO FILE FIRST AMENDED COMPLAINT** |
| v. | |
| NICHOLAS J. RUBINO, et al., | |
| Defendants. | **(Docket Nos. 13 & 22)** |

On September 17, 2007, plaintiff, a California prisoner proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. On October 12, 2007, after reviewing the complaint, the Honorable Martin J. Jenkins found plaintiff had stated cognizable claims alleging defendants, all San Francisco police officers, violated plaintiff's constitutional rights by withholding, prior to plaintiff's criminal trial, exculpatory evidence of plaintiff's innocence. In the same order, Judge Jenkins directed defendants to file a dispositive motion or, in the alternative, a notice indicating defendants are of the opinion such a motion is not warranted.

On January 4, 2008, defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that plaintiff's claims fail to state a claim upon which relief can be granted.[1] Plaintiff has filed opposition to the motion to dismiss, and defendants have filed a reply.

---

[1] The motion was filed by the City and County of San Francisco ("City"). The City was not named as a defendant to this action but has appeared on behalf of the defendants in their official capacities. (Mot. Dismiss at 4:5-9.)

On April 7, 2008, the above-titled action was reassigned to the undersigned. For the reasons stated below, the Court will grant defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

In his complaint and the declaration attached thereto, plaintiff makes the following allegations:

In December 1989, when leaving the Amazon Hotel in San Francisco, plaintiff was arrested by undercover police officers. He was taken to a police station, where he was questioned about drugs and contraband found in the hotel. Plaintiff told defendant Officer Rubino ("Rubino") that plaintiff didn't know anything about the drugs. Rubino subsequently released plaintiff, but told plaintiff he would get him sooner or later. When plaintiff returned to his car, a red 1986 Firebird, he discovered certain items were missing from the car. For several months following his release, plaintiff was followed by undercover police officers. Consequently, to avoid being followed, plaintiff, at the end of January 1990, traded his red Firebird for a brown truck belonging to a friend. (Compl. ¶¶ 10-18.)

On March 25, 1990, Felix Bastarrica ("Bastarrica") was shot and killed. Plaintiff was identified as a possible suspect. On April 13, 1990, plaintiff, accompanied by his attorney, came to the police station, where he was questioned about his whereabouts on the night of the shooting. Plaintiff explained that on the night in question he had played video games with his stepson at a video arcade and then stopped at Galan's Bar, where he got into a fight with an individual named Roberto and then went home. On April 19, 1990, Rubino arrested plaintiff for the murder of Bastarrica. Plaintiff was taken to the police station and interrogated by defendants Officer Crowley ("Crowley") and Officer Gerrans ("Gerrans"). During the interrogation, the officers acknowledged that on the previous night they had gone to Galan's Bar to verify plaintiff's story about the night of the shooting. Additionally, the officers questioned plaintiff about the type of car he owned, specifically, whether he owned a red vehicle. (Id. ¶¶ 22-30.)

In 1991, in the Superior Court of San Francisco County, plaintiff was convicted of Bastarrica's murder. In December 2003, plaintiff became aware that prosecutors and their

2

investigating officers have a legal obligation to disclose all exculpatory evidence to a criminal defendant before trial. (Id. ¶ 32.)   With the assistance of another inmate who reviewed the legal papers, trial transcripts and police reports from plaintiff's criminal proceedings, plaintiff realized that defendants should have disclosed the following exculpatory evidence to him prior to his criminal trial: (1) surveillance records/reports prepared by defendants documenting plaintiff's movements and whereabouts from December 1989 to April 19, 1990, which records/reports, plaintiff alleges, contain exculpatory evidence with respect to plaintiff's whereabouts at the time of the shooting; (2) witness statements collected by Crowley and Gerrans at Galan's Bar on April 18, 1990, which statements, plaintiff alleges, will confirm that plaintiff had a jeri curl hairstyle and was wearing a distinctive red and black jacket on the night of the shooting; (3) information as to how defendants knew plaintiff had a jeri curl on the night of the shooting, which information, plaintiff alleges, led them to show a mug shot of plaintiff with a jeri curl to an eyewitness three days after the shooting; (4) evidence that the officers knew plaintiff had a jeri curl on the night of the shooting, which evidence, plaintiff alleges, calls into question whether the lineup conducted on April 26, 1990 was unduly suggestive because it included all black males with afros; (5) evidence that Crowley and Gerrans obtained information about plaintiff's ownership of the red Firebird from someone other than plaintiff. (Id. ¶¶ 33-39.)

By the instant action, plaintiff claims his constitutional rights were violated by defendants' failure to disclose the above evidence.  Plaintiff seeks both declaratory and injunctive relief.  In particular, he seeks a declaratory judgment that defendants' failure to disclose and preserve the evidence was intentional and violated his constitutional rights to present a defense, as guaranteed by the Sixth Amendment, and to a fair trial, as guaranteed by the Fourteenth Amendment.  He also seeks an injunction ordering defendants or their representatives to locate, preserve, and provide plaintiff and the Court with defendants' "files, records, reports, logs, tape recordings and/or any other documents, papers or writing instrument" pertaining to plaintiff's state criminal proceedings, and to provide an explanation with respect to any items that have been lost or destroyed. (Compl. at 13-14.)

3

**DISCUSSION**

A.   Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp v Twombly, 127 S Ct 1955, 1974 (2007). The court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), but need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended, 275 F.3d 1187 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Federal courts are particularly liberal in construing allegations made in pro se civil rights complaints. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). In ruling on a Rule 12(b)(6) motion, the court may not consider any material outside the complaint but may consider exhibits attached thereto. See Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d 912, 925 (9th Cir. 2001); Fed. R. Civ. P. 10(c) (treating exhibits attached to complaint as part of complaint for purposes of ruling on 12(b)(6) motion).

B.   Analysis

    1.   Heck v. Humphrey

As noted, plaintiff seeks declaratory and injunctive relief for the alleged violation of his constitutional right to be provided, prior to trial, with evidence in possession of the prosecution and/or its investigating officers relevant to his defense. Plaintiff brings his claim under Brady v. Maryland, 373 U.S. 83 (1963), wherein the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87.  Since Brady, the Supreme Court has made clear that the duty to disclose such evidence applies even when there has been no request by the accused, see United States v. Agurs, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, see United States v. Bagley, 473 U.S. 667, 676 (1985). Under Brady, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682. In the criminal context, a defendant establishes a Brady violation whenever he can show that favorable evidence material to his case was not disclosed to the defense, without respect to whether the prosecution intentionally withheld such evidence. See Brady, 373 U.S. at 87.  Upon the showing of a Brady violation, the defendant is entitled to a new trial. See Strickler v. Greene, 527 U.S. 263, 266 (1999); Brady, 373 U.S. at 87-88.

In the civil rights context, a plaintiff claiming a Brady violation must show he was deprived of favorable evidence material to his case; additionally, in order to prevail on a § 1983 claim brought against investigating officers, a plaintiff must establish that the officers deliberately withheld exculpatory evidence from the prosecutor. See Tennison v. City and County of San Francisco, Nos. C 04-0574 CW & C 04-1463 CW, 2006 WL 733470, *27-29 (N.D. Cal. Mar. 22, 2006).

In the instant action, defendants move to dismiss the complaint under Heck v. Humphrey, 512 U.S. 477 (1994). Heck holds that in order to state a claim for damages for an allegedly unconstitutional conviction or term of imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff asserting a violation of 42 U.S.C. § 1983 must prove that the conviction or sentence has been reversed or declared invalid. Id. at 486-87. If success in the § 1983 lawsuit would necessarily demonstrate the invalidity of the confinement or its duration, the § 1983 lawsuit is barred, irrespective of whether the plaintiff seeks monetary damages or equitable relief.

5

1  Wilkinson v. Dotson, 544 U.S. 74, 81 (2005).  A complaint that is barred under Heck must be
2  dismissed.  Heck, 512 U.S. at 487.

3  It is undisputed herein that plaintiff's conviction has not been reversed or otherwise
4  declared invalid.  Thus, defendants argue, the current action is barred under Heck because a
5  determination by the Court that plaintiff is entitled to relief under § 1983 as a result of
6  defendants' failure to disclose favorable evidence material to plaintiff's case necessarily
7  would imply the invalidity of plaintiff's conviction.  In support of their argument, defendants
8  rely on the Ninth Circuit case of Ybarra v. Reno Thunderbird Mobile Home Village, 723
9  F.2d 675 (9th Cir. 1984), which case was decided prior to the Supreme Court's decision in
10 Heck.  In Ybarra, the plaintiff, a state prisoner serving a sentence of life imprisonment for
11 first degree murder, brought a suit for damages and declaratory relief under § 1983, alleging
12 therein that the prosecutor, along with the District Attorney and their mutual employer, the
13 County, had destroyed or permitted the destruction of exculpatory evidence needed for his
14 defense to the murder charge.  Id. at 677.  As here, the plaintiff claimed the failure to
15 preserve exculpatory material evidence constituted a Brady violation.  Id. at 678.

16 After finding the plaintiff could not prevail on his claims for damages because the
17 prosecutor was entitled to absolute immunity and no liability had been established as to the
18 District Attorney and the County, see id. at 678-81, the Ninth Circuit addressed the plaintiff's
19 claim that he was entitled to a declaratory judgment that he had suffered a constitutional
20 violation under Brady.  Acknowledging that declaratory relief is an available remedy under
21 § 1983, id. at 681, the Ninth Circuit nevertheless concluded the plaintiff's exclusive remedy,
22 for his claim that his right to a fair trial had been violated under Brady, was by way of habeas
23 corpus.  Specifically, the Ninth Circuit held:

> It is clear that the basis of Ybarra's claim is a challenge to the constitutionality of his conviction; in order to prevail on this claim, he must collaterally void his state court conviction.  Although he does not specifically request release, the finding of such declaratory relief in his favor would show that release was required.

27 Id. at 682 (citations omitted).  In support of its conclusion, the Ninth Circuit cited to Preiser
28 v. Rodriguez, 411 U.S. 475, 500 (1973), in which the Supreme Court held that habeas corpus

6

is the sole remedy when the relief sought is a determination that the prisoner is entitled to immediate release.  See id..

Here, defendants argue that, under Ybarra, plaintiff's claims for declaratory and injunctive relief are barred by Heck.  As noted, Ybarra was decided prior to Heck.  Defendants cite no Ninth Circuit authority, and the Court is aware of none, that has addressed, subsequent to Heck, the question of whether a plaintiff whose conviction has not been reversed is barred from bringing a § 1983 claim under Brady for damages or equitable relief.  Defendants argue that the rationale of Heck nonetheless is consistent with the reasoning of Ybarra, and that Heck does not call into question the conclusion reached by the Ninth Circuit.  Defendants further point out that a number of federal courts have found the Heck doctrine applicable to Brady claims.  See Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999); Moore v. Novak, 146 F.3d 531, 536 (8th Cir. 1998); Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir.1996); Robinson v. Rudenstein, No. 07-3160, 2008 WL 623594, *5 (E.D. Pa. Mar. 6, 2008); Gravely v. Speranza, 408 F. Supp. 2d 185, 189 (D.N.J. 2006); Strohl v. Lifequest Nursing Center, No. Civ. A. 01- 2722, 2002 WL 188571, at *3 (E.D. Pa. Feb. 4, 2002).

In opposition, plaintiff argues his claim is not barred because, plaintiff asserts, the relief he seeks does not necessarily demonstrate the invalidity of his conviction.  In support of his argument, plaintiff relies on Osborne v. District Attorney's Office, 423 F.3d 1050 (9th Cir. 2005) ("Osborne I"), in which the Ninth Circuit held a prisoner's § 1983 claim seeking post-conviction access to DNA evidence for biological testing is not barred under Heck.  In Osborne I, the plaintiff, a prisoner serving a sentence for state court convictions of kidnaping and sexual assault, filed a § 1983 action to compel the state to release DNA evidence used to convict him.  Id. at 1051.  Without reaching the question of whether there exists a constitutional right of post-conviction access to DNA evidence, the Ninth Circuit found the plaintiff's claim was not barred under Heck because success in the § 1983 action would not "necessarily demonstrate the invalidity of confinement or its duration." Id. at 1054 (internal quotation and citation omitted).  Specifically, the Ninth Circuit found the invalidity of the

7

plaintiff's conviction or confinement would not be demonstrated by the requested relief because: (1) success on the plaintiff's claim "would yield only *access* to the evidence – nothing more"; (2) the analysis of the DNA "[might] prove exculpatory, inculpatory, or inconclusive; thus there is a significant chance that the results [would] either confirm or have no effect on the validity of Osborne's confinement"; and (3) "even if the results [were to] exonerate Osborne, a separate action – alleging a separate constitutional violation altogether – would be required to overturn his conviction." Id. at 1054-55 (emphasis in original).

Subsequently, in Osborne v. District Attorney's Office, 521 F.3d 1118 (9th Cir. 2008) ("Osborne II"), petition for cert. filed, 77 U.S.L.W. 2009 (U.S. June 27, 2008) (No. 08-6), the Ninth Circuit found there exists a limited constitutional right to post-conviction access to DNA for biological testing that was not available at the time of the prisoner's trial. Id. at 1122. In so holding, the Ninth Circuit reasoned as follows:

> . . . Osborne's right to due process of law prohibits the State from denying him reasonable access to biological evidence for the purpose of further DNA testing, where that biological evidence was used to secure his conviction, the DNA testing is to be conducted using methods that were unavailable at the time of trial and are far more precise than the methods that were then available, such methods are capable of conclusively determining whether Osborne is the source of the genetic material, the testing can be conducted without cost or prejudice to the State, and the evidence is material to available forms of post-conviction relief.
>
> In so holding, however, we do not purport to set the standards by which all future cases must be judged. We are presented with a certain set of circumstances presenting a meritorious case for disclosure, and our analysis and holding are addressed to those circumstances only.

Id. at 1141-42 (footnote omitted). Additionally, the Ninth Circuit made clear that the plaintiff's claim of entitlement to DNA evidence was distinct from any claim he might bring in habeas corpus based on the results of the DNA analysis, which claim would assert the separate constitutional violation that he had been convicted of a crime of which he was actually innocent. See id. at 1131.

Based on the foregoing, the Court finds unpersuasive plaintiff's assertion that Osborne I stands for the proposition that Heck is inapplicable to all § 1983 claims seeking the remedy of production of evidence. As discussed above, Osborne I determined that the plaintiff's

8

1   § 1983 claim therein was viable not only because the plaintiff had merely requested access to
2   DNA evidence and not release from confinement, but also because the plaintiff's claim that
3   he was constitutionally entitled to such evidence was altogether separate from any claim the
4   plaintiff might assert in a habeas corpus action challenging the validity of his conviction.
5   Consequently, as the Ninth Circuit held, a determination in the § 1983 action that the
6   plaintiff's constitutional right of access to post-conviction DNA evidence had been violated
7   would not necessarily imply the invalidity of the plaintiff's conviction.  Moreover, the
8   plaintiff's success in such action would not necessarily imply the invalidity of his conviction,
9   because the DNA analysis might not prove to be exculpatory, but, rather, inculpatory or
10  inconclusive.

11       Here, by contrast, a determination that plaintiff is entitled to declaratory and/or
12  injunctive relief because his constitutional right to <u>Brady</u> evidence was violated would
13  necessarily demonstrate the invalidity of plaintiff's conviction.  Specifically, a finding herein
14  that <u>favorable</u> evidence <u>material</u> to plaintiff's case was not disclosed to the defense is the
15  same finding that, in the criminal context, would require a determination that plaintiff is
16  entitled to a new trial.  See <u>Ybarra</u>, 723 F.3d at 682.  Consequently, even though plaintiff is
17  not, by the instant action, seeking release, his success herein would necessarily demonstrate
18  the invalidity of plaintiff's confinement or its duration.  Further, the favorable material
19  evidence to which plaintiff seeks access would, as alleged by plaintiff in his complaint,
20  necessarily prove that plaintiff's rights under <u>Brady</u> had been violated.  Lastly, the Court
21  finds, based on the allegations in the complaint, that plaintiff has no constitutional right to
22  production of the evidence he seeks other than the right established in <u>Brady</u>.  See <u>Thames v.
23  Los Angeles Police Dept.</u>, No. CV 08-1044 RGK (MLG), 2008 WL 2641361, *4 (C.D. Cal.
24  June. 30, 2008) (finding plaintiff had no due process right to access police investigative
25  records absent showing records favorable and material under <u>Brady</u>).  Consequently, plaintiff
26  cannot avoid the <u>Heck</u> bar by asserting an independent right to production of evidence where
27  such claim does not necessitate a determination that his <u>Brady</u> rights were violated.

28       For the foregoing reasons, the Court concludes the instant action is barred under <u>Heck</u>.

9

1  Accordingly, defendants motion to dismiss will be granted.[2]

2      2.    <u>Statute of Limitations</u>

Defendants argue, in the alternative, that if plaintiff's complaint is not barred under <u>Heck</u>, the claims are barred by the applicable statute of limitations.

Section 1983 does not contain its own limitations period. See <u>Elliott v. City of Union City</u>, 25 F.3d 800, 802 (9th Cir. 1994). Rather, the appropriate period is that of the forum state's statute of limitations for personal injury torts. See <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1985). In the event the state has multiple statutes of limitations for different torts, federal courts considering claims brought pursuant to § 1983 borrow the general or residual statute for personal injury actions. See <u>Silva v. Crain</u>, 169 F.3d 608, 610 (9th Cir. 1999). Effective January 1, 2003, California's general residual statute of limitations for personal injury actions is two years; prior to that date, the limitations period for such actions was one year. See <u>Maldonado v. Harris</u>, 370 F.3d 945, 954-55 (9th Cir. 2004). Additionally, a federal court must give effect to a state's tolling provisions. See <u>Hardin v. Straub</u>, 490 U.S. 536, 543-44 (1989). In California, incarceration of the plaintiff is a disability that tolls the statute for a maximum of two years. See Cal. Civ. Proc. Code § 352.1.

Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him such that reasonable inquiry will reveal his cause of action. See <u>United States v. Kubrick</u>, 444 U.S. 111, 122-24 (1979). A plaintiff must be diligent in discovering the critical facts of his injury, however. Thus, a plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the expiration of the statutory limitations period, if he should have discovered such violation by the exercise of due diligence. <u>Bibeau v. Pacific Northwest Research Found.</u>, 188 F.3d 1105, 1108 (9th Cir. 1999), <u>amended</u>, 208 F.3d 831 (9th Cir. 2000). Once a plaintiff knows he has been

---

[2] In his opposition, plaintiff states that in order to avoid the <u>Heck</u> bar, he is willing to strike his claim for a declaratory judgment and go forward only with his claim for injunctive relief. As discussed above, however, plaintiff's § 1983 claim is barred regardless of the relief sought. Consequently, such leave to amend will be denied.

injured and who inflicted the injury, he is on inquiry notice to determine the readily-discoverable details of his claims. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995).

Here, defendants argue, plaintiff's claims accrued at the time of plaintiff's trial in 1991, because at that time the facts either were known to plaintiff or his attorney or should have been discovered through the exercise of due diligence. In opposition, plaintiff asserts he did not possess sufficient facts to discover the injuries he suffered and who caused them until May 2006, when the inmate reviewing plaintiff's legal files informed him that defendants had withheld exculpatory evidence. He further argues that no prior knowledge of such injuries can be imputed to him through his trial attorney because his attorney likewise was not aware of the withheld evidence.

At the outset, the Court finds that where a plaintiff is represented at the time an injury occurs, his counsel's knowledge is imputed to him for purposes of the statute of limitations. See Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994) (holding counsel's knowledge of facts with respect to allegedly tainted lineup imputed to plaintiff); see also Temple v. Adams, No. CV-F-04-6716 OWW DLB (E.D. Cal. Aug. 23, 2006) (finding plaintiff's attorney's failure to pursue reasonable investigation that would have led to discovery of extent of plaintiff's injury did not mitigate plaintiff's failure to timely file § 1983 claim). Consequently, in addressing each of plaintiff's claims, the Court will consider whether either plaintiff or his attorney knew or should have discovered the critical facts with respect to plaintiff's injuries.

        a.      Surveillance Records/Reports

Plaintiff seeks records and/or reports maintained by defendants with respect to their undercover surveillance of plaintiff from December 1989 to April 19, 1990. According to plaintiff, such records/reports contain exonerating evidence that was never introduced at plaintiff's trial on the issue of plaintiff's whereabouts at the time of the shooting. Specifically, plaintiff asserts, the records/reports would show plaintiff had a jeri curl hairstyle

on the night of the shooting, that plaintiff did not leave his house after 8:30 p.m. on the night of the shooting, and that plaintiff was wearing a distinctive red and black jacket on the night of the shooting.

Plaintiff claims he could not have discovered the existence of such records and/or reports prior to May 2006, when he learned defendants were required to record their surveillance activities. Plaintiff states, however, that he knew, during the surveillance period, both that he was being followed and by whom he was being followed. (See Compl. ¶ 17.) Based on such knowledge, plaintiff and/or his attorney should have discovered, through the exercise of due diligence and reasonable inquiry, that police procedures required defendants to keep records and/or reports of their surveillance activities. Had they done so, they would have been able to determine whether any records and/or reports had been withheld from the defense. Accordingly, plaintiff's claim that defendants withheld such evidence accrued at the latest at the time of plaintiff's state criminal proceedings in 1991.

          b.        <u>Witness Statements</u>

Plaintiff seeks access to witness statements collected by Crowley and Gerrans at Galan's Bar on April 18, 1990. Plaintiff asserts he could not have discovered the existence of such statements prior to May 2006, when he was advised by the inmate assisting him that Crowley and Gerrans would have taken notes of their conversations with the witnesses. Plaintiff does not allege, however, that he was unaware that Crowley and Gerrans had interviewed people at Galan's Bar. Rather, plaintiff states in his complaint that when he was arrested on April 19, 1990, he "informed the detectives that he had seen them the night before, April 18, at Galan's Bar talking with patrons." (Compl. ¶ 29.) Based on such knowledge, plaintiff and/or his attorney should have discovered, through the exercise of due diligence and reasonable inquiry, that Crowley and Gerrans took notes of their conversations with prospective witnesses at Galan's Bar. Had they done so, they would have been able to determine that such notes had been withheld from the defense. Accordingly, plaintiff's claim that defendants withheld such evidence accrued at the latest at the time of plaintiff's state

criminal proceedings in 1991.

### c. Plaintiff's Hairstyle

Plaintiff claims defendants withheld evidence that would have shown how they knew plaintiff had a jeri curl hairstyle on the night of the shooting. Specifically, plaintiff asserts, defendants, three days after the shooting, showed a mug shot of plaintiff with a jeri curl to an eyewitness who identified plaintiff from the photograph, even though defendants also had a mug shot of plaintiff with an afro hairstyle. Plaintiff does not allege he was unaware of the contents of the photograph the eyewitness was shown; rather, his claimed injury is that defendants did not disclose how they knew plaintiff had a jeri curl on the night of the shooting. Plaintiff knew, however, that he had a jeri curl on the night of the shooting, that the mug shot displayed to the eyewitness showed plaintiff with a jeri curl, and that the police also had a mug shot of him with an afro. Based on such knowledge, plaintiff and/or his attorney should have discovered, through the exercise of due diligence and reasonable inquiry, that the police had information about plaintiff's hairstyle on the night of the shooting and how they came to obtain such information. Accordingly, plaintiff's claim that defendants withheld evidence that would have shown how they knew plaintiff had a jeri curl on the night of the shooting accrued at the latest at the time of plaintiff's state criminal proceedings in 1991.

### d. The Lineup

On April 26, 1990, a week after plaintiff was arrested, defendants conducted a physical lineup of six black males, including plaintiff, all with afros. Plaintiff claims defendants, in conducting the lineup, withheld evidence indicating they knew plaintiff had a jeri curl on the night of the shooting. Plaintiff states he did not learn that defendants had withheld such evidence until May 2006, when he reviewed his legal files. At the time of the lineup, however, plaintiff knew that all of the men in the lineup had afros, that plaintiff had a jeri curl on the night of the shooting and, as discussed above, that three days after the shooting defendants had shown an eyewitness a mug shot of plaintiff with a jeri curl. Based

on such knowledge, plaintiff and/or his attorney should have discovered, through the exercise of due diligence and reasonable inquiry, that defendants knew plaintiff had a jeri curl on the night of the shooting and withheld such evidence from the defense when conducting the lineup. Accordingly, plaintiff's claim that defendants withheld such evidence accrued at the latest at the time of plaintiff's state criminal proceedings in 1991.

### e. Plaintiff's Firebird

Plaintiff claims defendants Crowley and Gerrans withheld evidence that they knew plaintiff owned a red Firebird prior to the shooting. Specifically, plaintiff claims Crowley and Gerrans knew plaintiff had owned the Firebird even they did not start investigating plaintiff until more than two months after he had sold the Firebird. Plaintiff states he did not discover the injury resulting from defendants' conduct until he reviewed his legal files in May 2006. Plaintiff knew, however, as early as April 19, 1990, that Crowley and Gerrans might have information about plaintiff's ownership of the red Firebird; at that time, plaintiff was interviewed by Crowley and Gerrans and they questioned him about his ownership of a red vehicle. (See Compl. ¶ 30.) Based on such knowledge, plaintiff and/or his attorney should have discovered, through the exercise of due diligence and reasonable inquiry, that defendants had learned about plaintiff's ownership of the red Firebird from sources other than plaintiff and how they came to obtain such information. Accordingly, plaintiff's claim that defendants withheld information with respect to how they knew about plaintiff's Firebird accrued at the latest at the time of plaintiff's state criminal proceedings in 1991.

### f. Summary

In sum, plaintiff and/or his attorney either knew, or in the exercise of due diligence and reasonable inquiry should have discovered, all of the injuries alleged herein and their causes no later than the conclusion of his state criminal proceedings in 1991. Consequently, plaintiff's § 1983 claims accrued, at the latest, in 1991. As plaintiff had three years from the date on which his claims accrued in which to file his complaint against defendants, he was

required to do so no later than 1994.[3] Plaintiff, however, did not file the instant action until September 17, 2007. As a result, the complaint is clearly time-barred. Further, the complaint, when read with the requisite liberality, contains no allegation that would suggest plaintiff is able to show he is entitled to any period of statutory tolling other than that discussed above. See Jablon v. Dean Witter & Co., 614 F.2d 677, 683 (9th Cir. 1980) (holding complaint may be dismissed on statute of limitations grounds without leave to amend, where allegations therein, even when read with required liberality, would not permit plaintiff to prove statute was tolled). Accordingly, the complaint is subject to dismissal on the alternative ground that the complaint is time-barred.[4]

C. Unserved Defendants

In its October 12, 2007 Order of Service, the Court directed the United States Marshal ("Marshal") to serve, at the SFPD, the four investigating officers named as defendants to this action. The Court also directed that a courtesy copy of the Order of Service be mailed to the San Francisco City Attorney. On January 4, 2008, Deputy City Attorney Daniel Zaheer ("Zaheer") filed the instant motion to dismiss on behalf of defendants in their official capacities. In so doing, Zaheer submitted a declaration in which he stated: (1) the Marshal had attempted to serve the individual defendants at the SFPD and had served a courtesy copy of the complaint on the San Francisco City Attorney's Office; (2) three of the defendants are former SFPD employees and have retired; (3) Zaheer had been unable to verify whether the fourth defendant was a former SFPD employee or is a current SFPD employee, but his efforts to do so are continuing; and (4) Zaheer had drafted letters to the defendants and asked the

---

[3] The two-year statute of limitations for personal injury actions, which statute became effective January 1, 2003, does not apply retroactively to claims that accrued prior to that date. See Maldonado, 370 F.3d at 954-55. Thus, plaintiff had one year under the pre-2003 statute of limitations, plus an additional two years under the statute that tolls for the disability of imprisonment, in which to file his action.

[4] As the Court has determined plaintiff's claims are barred under Heck and, alternatively, are time-barred, the Court does not reach defendants' arguments that plaintiff has not stated cognizable Brady claims against the investigating officers and that the officers are immune from suit.

City's Retirement Department to forward them to the individual officers. (Zaheer Decl. ¶¶ 2-5.) Subsequently, upon filing the reply brief in this matter on April 16, 2008, Zaheer notified the Court that all of the individual defendants had been located but had not yet been served.

Although the defendants to this action have not been served in their individual capacities, it is apparent that the claims against them are subject to dismissal for the reasons discussed above. Specifically, the allegations against the defendants in their individual capacities are the same as those against the defendants in their official capacities, and there is no suggestion in the complaint and exhibits attached thereto, or in the briefs and exhibits filed in connection with the instant motion to dismiss, that the analysis of the claims against the defendants in their individual capacities differs in any respect from the analysis of the claims against the defendants in their official capacities. Cf. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803 (9th Cir.1995) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant). As the Court has found plaintiff's claims are barred under Heck, and, alternatively, that the claims are time-barred, plaintiff cannot prevail on his claims against the defendants in their individual capacities. Accordingly, the claims against defendants in their individual capacities will be dismissed.

D.  Plaintiff's Motion for Leave to File First Amended Complaint

Plaintiff has moved for leave to file a first amended complaint expressly naming the SFPD as a defendant. For the reasons discussed above, however, the Court finds such amendment would be futile. Accordingly, plaintiff's motion to amend will be denied.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion to dismiss is hereby GRANTED, and the above-titled action is hereby DISMISSED with prejudice as to all defendants. (Docket No. 13.)

16

     2. Plaintiff's motion for leave to file a first amended complaint is hereby DENIED. (Docket No. 22.)

     This order terminates Docket Nos. 13 and 22.

     The Clerk shall close the file.

     IT IS SO ORDERED.

DATED: September 17, 2008

                                           _____
                                           MAXINE M. CHESNEY
                                           United States District Judge